UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ) | CASE NO. 16-54770-WLH |
| COLLEEN PATRICIA BRANNON, ) | |
| ) | |
| Debtor. ) | |
| ----------------------------------) | ------------------------------------- |
| ) | |
| JASON L. PETTIE, Chapter 7 Trustee for ) | |
| the Estate of Colleen Patricia Brannon, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CONTESTED MATTER |
| ) | |
| REGIONS BANK, ) | |
| ROCKDALE COUNTY TAX ) | |
| BENJAMIN T. POLK, and ) | |
| COLLEEN PATRICIA BRANNON, ) | |
| ) | |
| Respondents. ) | |

**TRUSTEE'S MOTION FOR AUTHORITY TO (I) SELL PROPERTY OF THE
BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND
ENCUMBRANCES AND (II) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW Jason L. Pettie, as Chapter 7 Trustee for the bankruptcy estate of

Colleen Patricia Brannon ("**Trustee**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m), and

Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, by and through undersigned

counsel, and files *Trustee's Motion for Authority to (I) Sell Real Property of the Bankruptcy*

*Estate Free and Clear of Liens, Interests, and Encumbrances and (II) Disburse Certain Proceeds*

*at Closing* (the "**Sale Motion**").  In support of the Sale Motion, Trustee shows the Court

as follows:

**Venue and Jurisdiction**

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and

1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This

Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

*i. General Background*

2.      Colleen Patricia Brannon (**"Debtor"**) filed the above-styled bankruptcy case

by filing a petition for relief under Chapter 7 of Title 11 of the United States Code on

March 15, 2016 (the "**Petition Date**"), initiating Case No. 16-54770-WLH (the

"**Bankruptcy Case**").

3.      On or about March 16, 2016, Trustee was appointed to the Case as the

interim Chapter 7 trustee, pursuant to 11 U.S.C. § 701(a)(1).

4.      The original meeting of creditors was conducted and concluded on April

20, 2016, pursuant to 11 U.S.C. § 341(a), after which time, Trustee became the permanent

Chapter 7 Trustee, pursuant to 11 U.S.C. § 702(d).

5.      At the commencement of the Bankruptcy Case, the Debtor's estate was

created under 11 U.S.C. § 541(a) (collectively, the "**Bankruptcy Estate**"), and the

Bankruptcy Estate included all Debtor's legal or equitable interests in property as of the

commencement of the Bankruptcy Case and any interest in property that the Bankruptcy

Estate acquired after commencement of the Bankruptcy Case.  11 U.S.C. § 541(a)(1) and (7).

6.      Trustee is the sole representative of the Bankruptcy Estate.  11 U.S.C. § 323(a).

7.      Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 11] on July 11, 2016, and the Court entered an *Order* [Doc. No. 19] on November 14, 2016, authorizing the appointment of Arnall Golden Gregory LLP as attorneys for Trustee.

### ii. The Property

8.      By virtue of a *Warranty Deed* dated May 10, 2002 (the "**Deed**") and recorded on the real property records with the Superior Court of Rockdale County (the "**Real Estate Records**") on October 23, 2002 [Pages 192–195 of Deed Book 2467], Debtor and Benjamin T. Polk ("**Mr. Polk**") purchased that certain real property known generally as 3291 Zingara Road, NE, Conyers, Rockdale County, Georgia 30094 (the "**Property**").

### iii. Order Authorizing Trustee's Sale of the Property Under 11 US.C. Section 363(h)

9.      On September 7, 2016, Trustee filed a *Complaint* [Doc. No. 17] against Regions Bank, Mr. Polk and Debtor, initiating adversary Proceeding No. 16-05212-WLH [A. P. Doc. No. 1], seeking authority to sell co-owned property under 11 U.S.C. §§ 363(h).

10.     On April 6, 2018, the Court entered an *Order Granting Summary Judgment* [A. P. Doc. No. 37], approving and authorizing, among other things, Trustee to sell both the Estate's interest and Mr. Polk's interest in the Property under 11 U.S.C. § 363(h).

11.    On December 2, 2016, a *Consent Judgment Declaring Deed to Secure Debt of Regions Bank Not a Valid Lien Against the Property and Granting Other Relief* [Doc. No. 17], which declared that the first security deed of Regions Bank was paid in full by the second security deed of Regions Bank.  Regions Bank further disclaimed any interest in the Property or entitlement to the net sale proceeds from the sale of the Property by virtue of the first security deed.

### iv. Alleged Liens, Interests, and Encumbrances

12.    Trustee obtained a full title examination report of the Property dated July 21, 2016 and effective June 24, 2016 (the "**Title Report**").

13.    The Title Report reflects the following:

(a) a *Security Deed* (the "**First Deed**")dated October 3, 2003 and recorded on the real property records for Superior Court of Rockdale County, Georgia (the "**Real Estate Records**") on October 20, 2003 for a revolving line of credit limit in the amount of $35,000.00 in favor of Regions Bank; and

(b) a *Security Deed* (the "**Second Deed**") dated October 4, 2008 and recorded on the Real Estate Records on October 20, 2008 for a revolving line of credit limit in the amount of $35,000.00 in favor of Regions Bank.

14.    The First Deed of Regions Bank matured on October 17, 2008.  As aforesaid, the First Deed of Regions Bank was paid in full by the Second Deed of Regions Bank, but simply never cancelled of record.

15.     Therefore, with the exception of unpaid *ad valorem* real property taxes due to Rockdale County Tax Commissioner ("**Rockdale County**") for 2017 and 2018 in the amounts of $1,152.73 and $2,189.69, respectively, and the Bankruptcy Estate's pro-ration of 2019, there is only one encumbrance on or against the Property, which is in favor of Regions Bank which has a loan payoff in the approximate amount of $34,760.00. See *Schedule D: Creditors Who Have Claims Secured by Property* [Page 23 of Doc. No. 1].

### Request for Authority to Sell Property of the Bankruptcy Estate
### Free and Clear of all Liens, Interests, and Encumbrances
### Pursuant to 11 U.S.C. §§ 363(b) and (f)

16.     Based on a thorough inspection, evaluation and comparative marketing analysis by a licensed real estate broker, Trustee had determined an appropriate listing price would be $123,000.00.

17.     On July 20, 2018, Trustee filed his *Application to Employ Real Estate Agent* [Doc. No. 22]. The Bankruptcy Court entered an *Order* [Doc. No. 23] on July 30, 2018, authorizing the employment of Southside Realtors and Duane Lockwood (collectively, the "**Realtor**") as the listing agent for the Property for a six percent (6%) commission on the purchase price.  Trustee advertised the Property for sale with a listing price of $123,000.00.

18.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for the sale of the Property to Maritza Castro (the "**Purchaser**"), "as is, where is," for a sale price of $130,000.00 (the "**Purchase Price**"), subject to Bankruptcy Court approval (the "**Contract**"). A true and correct copy of the Contract is attached hereto and incorporated herein by reference as Exhibit "A."

19.     The Purchaser was procured through the efforts of Trustee and his Realtor, is a *bona fide* purchaser, and is not an insider of Debtor, Mr. Polk, Trustee, or the Realtor. The Purchaser has submitted an earnest money deposit in the amount of $2,600.00. Trustee will pay up to $3,900.00 in Purchasers' closing costs.

20.     Trustee has received a total of four (4) offers on the Property. Trustee's proposed Contract with a Purchase Price of $130,000.00 is by far the best offer that Trustee has received, is subject to no contingencies whatsoever, and represents an appropriate selling price for the Property.

## Legal Analysis

### *i. Sale Free and Clear*

21.     Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.     Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in such property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property.  11 U.S.C. § 363(f).  Specifically, that code section provides:

(f)  The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

23.    As set forth below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, interests, claims, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as they had in the Property.

24.    Pursuant to the Title Report, Regions Bank and Rockdale County hold the only liens on or against the Property.  The proposed Purchase Price is greater than the sum of the claim of Regions Bank and all *ad valorem* taxes due Rockdale County, satisfying 11 U.S.C. § 363(f)(3).  As a result, the Property can be sold free and clear of the liens of Regions Bank and Rockdale County.

### ii. Good Faith of Trustee and Purchasers

25.    Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith.  *See* 11 U.S.C. § 363(m).

12920120v1

26.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair advantage of other offerors.  *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

27.     Trustee and Purchaser have proceeded in good faith, and Purchaser is a *bona fide,* good-faith purchaser and not an insider of Debtor, Mr. Polk, Trustee, or Realtor. Consequently, Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

**Request for Authority to Disburse Certain Proceeds at Closing**

28.     Trustee requests authority to have all sale proceeds paid to him at closing and for authority to have paid at closing: (a) the payoff to Regions Bank on the Second Deed; (b) all outstanding *ad valorem* real property taxes including but not limited to 2017 in the amount of $1,152.73 and 2018 in the amount of $2,186.69; (c) the Bankruptcy Estate's pro-ration of the 2019 *ad valorem* county real property taxes estimated at $107.31 (based on 2018 tax bill); (d) real estate commission of six percent (6%) of the Purchase Price in the amount of $7,800.00; (e) any capital gains or other taxes related to the sale (none anticipated); (f) water and sewer liens (none anticipated); (g) Purchaser's closing costs up to $3,900.00; and (h) all other costs of sale, or costs necessary to close a sale of the Property. Thereafter, Trustee is authorized to disburse at closing, one-half of the remaining net sale proceeds to Ms. Polk.

29.     All other distributions will be made only upon further order of the Court.

30.     To the extent funds are disbursed at closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

31.     Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $38,000.00 coming into the Bankruptcy Estate, all of which will be available to distribute in accordance with 11 U.S.C. § 726. Accordingly, upon information and belief, the proposed sale of the Property to Purchasers will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Bankruptcy Estate.

### Other Relief Requested

32.     Trustee expressly reserves and does not waive his right to surcharge the Property and the proceeds thereof, to the extent it secures an allowed secured claim, for reasonable, necessary costs of preserving or disposing of the Property to the extent of any benefit to the holders of such secured claims under 11 U.S.C. § 506(c).

33.     In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

34.     Finally, following notice to all creditors and parties in interest of the Sale Motion, and the date of the Hearing, Trustee invites any and all competing cash bid which exceed the present Contract by **at least $7,000.00,** supported by earnest money of **at least $5,000.00 (or two (2%) percent of the bid price)**, with no contingencies, and the ability to

close within ten (10) days from Bankruptcy Court approval.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Granting the Sale Motion;

(b)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests and encumbrances;

(c)     Authorizing the distribution of certain proceeds at closing;

(d)     Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h);

(e)     Reserving to the Bankruptcy Estate all rights under 11 U.S.C. § 506(c); and

(f)     Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 6th day of December, 2018.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By:*/s/ Neil C. Gordon*
    Neil C. Gordon
    Georgia Bar No. 302387
    neil.gordon@agg.com
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Tele: (404) 873-8500 / Fax: (404) 873-8501

**EXHIBIT "A" FOLLOWS**

12920120v1

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **JASON L. PETTIE, as and only as Trustee in Bankruptcy for Estate of COLLEEN PATRICIA BRANNON (Chapter 7 Case No. 16-54770-WLH)** (hereinafter referred to as "Seller") and **MARITZA CASTRO** (hereinafter, "Purchaser");

## WITNESSETH:

1.    Agreement to Sell and Purchase.    For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 333 of the 16th District of Rockdale County and commonly known as 3291 Zingara Road, NE, Conyers, Georgia 30094,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.    Purchase Price; Method of Payment.    The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **ONE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($130,000.00)**. Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the pro-rations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent.  Purchaser's obligation to close shall not be subject to any financial contingency unless set forth hereafter on **EXHIBIT "C."**

3.    Earnest Money.    Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **TWO THOUSAND SIX HUNDRED AND NO/100 DOLLARS ($2,600.00)** (the "Earnest Money"). Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing. All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit. If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing. In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify Purchaser. Purchaser shall have 3 banking days after notice to deliver good funds to Seller. In the event Purchaser does not timely deliver good funds, the Seller shall have the right to terminate

12915475v1

event Purchaser does not timely deliver good funds, the Seller shall have the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement. In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance. The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default. In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

4.  Access and Inspection; Examination by Purchaser, Examination Period.

(a)  Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no obligation to correct any objections Purchaser may have or to make any repairs to the Property. The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-based paint hazards and damage from termite and other wood-destroying organisms. Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

(b)  Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

5.  Closing.  The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before **January 18, 2019, or within ten (10) days following approval of the sale by the Bankruptcy Court** as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or **Campbell & Brannon, LLC, 5565 Glenridge Connector, Suite 350, Atlanta, Georgia 30342; Telephone: 770.396.8535,** or at such other place as Seller and Purchaser may mutually agree upon. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

6.  <u>Prorations and Adjustments to Purchase Price.</u>  The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

(a)  All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date.  In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller;

(b)  Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.  [Intentionally omitted.]

8.  <u>Disposal Systems and Water Source.</u>  Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.  <u>Title Examination.</u>  Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title:  a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court.  Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections.  If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein.  It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect.  It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.    <u>Proceedings at Closing.</u>  On the Closing Date, the Closing shall take place as follows:

 (a) Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "A", conveying the Property by the legal description set forth in Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) an affidavit of Seller's Residence in the form of and on the terms and conditions required by the Revenue Department for the State of Georgia; (iv) and such other instruments as are normal and customary in a purchase and sale transaction of this type; and

 (b) Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.    <u>Costs of Closing.</u>  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property.  Seller shall pay Seller's attorneys' fees.  Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees.  All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.    <u>Disclaimer of Warranties.</u>  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.  Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY.  The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.    <u>Possession.</u>  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.    [Intentionally omitted.]

15.    <u>Remedies.</u>  [Intentionally omitted.]



16.    Damage or Destruction.    Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker.

17.    Condemnation.    In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof.   If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void.  In the event of a taking of less than all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.    Association/Assessment Fees.    Purchaser shall determine if any mandatory association/ assessment fees are payable.   Seller makes no representation about any such association and/or assessment fees.

19.    Disclaimer.

(a)    **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto.  Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)    **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property.   Persons who have an interest in the

JP

MC

12915475v1

Property may be required by law to undertake the cleanup of such substances. Purchaser acknowledges that: Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove. Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

20. <u>Assignment.</u> This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller. No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

21. <u>Parties.</u> This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns. The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22. <u>Broker and Commission.</u> All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United States Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a fee of **six percent (6.0%)** of the Purchase Price that shall be divided and paid to Listing Broker and Selling Broker. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof. Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23. <u>Modification.</u> This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto. This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.





12915475v1

24.    <u>Applicable Law.</u>  This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.    <u>Counterparts.</u>  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

26.    <u>Time.</u>  Time is and shall be of the essence of this Agreement.

27.    <u>Captions.</u>  The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.    <u>Exhibits.</u>  Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.    <u>Notices.</u>  All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing.  Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement.  Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication.  Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.    <u>Survival.</u>  The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price. Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.    <u>Bankruptcy Court Approval.</u>   Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 16-54770-WLH** (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds.  In the event the

12915475v1

Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder. Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property. Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

32.   <u>Home Warranty.</u>  Purchaser may obtain a home warranty at Purchaser's expense.

33.   <u>Locks Changed.</u>  Purchaser shall change the locks to the Property at Purchaser's expense.

34.   <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

35.   <u>Special Stipulations.</u>  The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.

This Agreement shall be open for acceptance **until 11:59 p.m. on the December 5th, 2018**, which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this _____ day of December, 2018.

SELLER:

_____ [SEAL]
JASON L. PETTIE, AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF COLLEEN PATRICIA BRANNON

Initial address for notices:

c/o Arnall Golden Gregory LLP
171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363

12915475v1

LISTING BROKER:
SOUTHSIDE REALTORS
License No. H-64477

By: _____ [SEAL

Printed Name:    Duane Lockwood
                 License No. 209521
Title:           Realtor

157 Keys Ferry Street
McDonough, GA 30253
Telephone: (404) 867-4804
Email: lockwooddua@bellsouth.net

Accepted by Purchaser this 4th day of December, 2018.

PURCHASER:

_____ [SEAL]
MARITZA CASTRO

SELLING BROKER:
PALMERHOUSE PROPERTIES
License No. H-62466

By: _____ [SEAL]

Printed Name: Celia Quinones
              License No. 1688232
Title:        Realtor

2911 Piedmont Road, Suite B
Atlanta, GA 30305
Telephone: (404) 79-8611
Email: quinonescelia1@gmail.com

JP

MC

## PURCHASE AND SALE AGREEMENT

### Index to Exhibits

Exhibit "A"   -   Form of Trustee's Deed of Real Estate

Exhibit "B"   -   Form of Seller's Affidavit

Exhibit "C"   -   Special Stipulations (If Any)

JP

12915475v1

MC

## EXHIBIT "A"

### Form of Trustee's Deed of Real Estate

JP

MC

12915475v1

Return to:
Michael Campbell, Esq.
Campbell & Brannon, LLC
Glenridge Highlands Two
5565 Glenridge Connector
Suite 350
Atlanta, Georgia 30342

STATE OF GEORGIA

COUNTY OF FULTON

## TRUSTEE'S DEED OF REAL ESTATE

THIS INDENTURE, made this 18th day of **January, 2019** between **JASON L. PETTIE**, as and only as Trustee in Bankruptcy for the Estate of **COLLEEN PATRICIA BRANNON**, the Debtor, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 16-54770-WLH**, filed on **March 15, 2016** (hereinafter called "Grantor"), and **MARITZA CASTRO** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines attached as EXHIBIT "A" and by virtue of the power and authority given in and by that (a) Order authorizing the Grantor's sale of the joint titleholder's interest in the Property entered upon the *Order Granting Summary Judgment and Judgment* (the "Order and Judgment"), which Order and Judgment was entered by the United States Bankruptcy Court for the Northern District of Georgia on **April 6, 2018**, a copy of which is attached as EXHIBIT B", and (b) Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **January ____, 2019**, a copy of which is attached as EXHIBIT C", and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 333 OF THE 16TH DISTRICT, ROCKDALE COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE POINT OF INTERSECTION OF THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL (80' R/W) AND THE CENTERLINE OF ZINGARA ROAD; THENCE 418.9 FEET SOUTHEASTERLY ALONG THE SOUTHERLY NGHT OF WAY OF HIGHTOWER TRAIL TO AN IRON PIN FOUND (5/8" REBAR); THENCE SOUTH 27 DEGREES 56 MINUTES WEST A DISTANCE OF 400.00 FEET TO AN

_____
Grantor's Initials

IRON PIN SET (1/2" REBAR) AND THE TRUE POINT OF BEGINNING. THENCE SOUTH 65 DEGREES 15 MINUTES EAST A DISTANCE OF 26.23 FEET TO AN IRON PIN FOUND (1/2" REBAR); THENCE SOUTH 72 DEGREES 15 MINUTES EAST A DISTANCE OF 289.86 FEET TO AN IRON PIN FOUND (1/2" PIPE); THENCE SOUTH 27 DEGREES 44 MINUTES WEST A DISTANCE OF 649.00 FEET TO AN IRON PIN FOUND (1/2" PIPE); THENCE NORTH 63 DEGREES 19 MINUTES WEST A DISTANCE OF 3 13.83 FEET TO AND IRON PIN FOUND (1/2" PIPE); THENCE NORTH 27 DEGREES 56 MINUTES EAST A DISTANCE OF 603.15 FEET TO AN IRON PIN SET (1/2" REBAR) AND THE TRUE POINT OF BEGINNING.

SAID TRACT OR PARCEL OF LAND BEING 4.48 ACRES OF LAND WITH IMPROVEMENTS AS SHOWN ON A SURVEY FOR BENJAMIN T. POLK BY J. M. MASSEY & COMPANY (JOHN M. MASSEY, JR. GEORGIA REGISTERED LAND SURVEYOR NO. 2490) DATED OCTOBER 1, 2002.

ITEM TWO — (ACCESS EASEMENT):

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 333 OF THE 16TH DISTRICT, ROCKDALE COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS;

BEGINNING AT THE POINT OF INTERSECTION OF THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL (80' R/W) AND THE CENTERLINE OF ZINGARA ROAD; THENCE 418.9 FEET SOUTHEASTERLY ALONG THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL TO AN IRON PIN FOUND (5/8" REBAR); THENCE SOUTH 27 DEGREES 56 MINUTES WEST A DISTANCE OF 1003.15 FEET TO AN IRON PIN FOUND (1/2" PIPE) AND THE TRUE POINT OF BEGINNING. THENCE SOUTH 63 DEGREES 19 MINUTES EAST A DISTANCE OF 20.00 FEET TO A POINT; THENCE SOUTH 26 DEGREES 41 MINUTES WEST A DISTANCE OF 20.00 FEET TO A POINT; THENCE NORTH 63 DEGREES 19 MINUTES WEST A DISTANCE OF 173.70 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY OF ZINGARA ROAD; THENCE NORTH 14 DEGREES 33 MINUTES EAST ALONG THE EASTERLY RIGHT OF WAY OF ZINGARA ROAD A DISTANCE OF 20.46 FEET TO A POINT; THENCE SOUTH 63 DEGREES 19 MINUTES EAST A DISTANCE OF 158.00 FEET TO AN IRON PIN FOUND (1/2" PIPE) AND THE TRUE POINT OF BEGINNING.

SAID TRACT OR PARCEL OF LAND BEING A 20-FOOT WIDE ACCESS EASEMENT CONTAINING 0.08 ACRE OF LAND AS SHOWN ON A SURVEY FOR BENJAMIN T. POLK BY J. M. MASSEY & COMPANY (JOHN M. MASSEY, JR. GEORGIA REGISTERED LAND SURVEYOR NO. 2490) DATED OCTOBER 1, 2002, ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

SAID PROPERTY KNOWN GENERALLY AS 3291 ZINGARA ROAD, NE, CONYERS, ROCKDALE COUNTY, GEORGIA 30094. PARCEL ID: 12736682

with the appurtenances and all of the estate which the said **COLLEEN PATRICIA BRANNON**, the Debtor, had in said premises at the time of the filing of his Voluntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtor, **COLLEEN PATRICIA BRANNON**, pursuant to the Sale Order (collectively the "Property").

12915475v1

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above written.

GRANTOR:

Signed, sealed and delivered on
the 18th day of January, 2019, in
the presence of:

_____    [SEAL]
**JASON L. PETTIE,** as and only as
Trustee in Bankruptcy for the Estate of
**COLLEEN PATRICIA BRANNON,**
pursuant to the Bankruptcy Court Sale Order and
Order and Judgment Authorizing the Sale of the
Property

_____
Unofficial Witness

_____
Notary Public
My Commission Expires: _____

[NOTARY SEAL]

12915475v1

## TRUSTEE'S DEED OF REAL ESTATE

### Index to Exhibits

Exhibit "A"   -   Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"   -   Sale Order

12915475v1

EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE

Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

JP

MC

12915475v1

Case 16-54770-wlh    Doc 6    Filed 03/16/16    Entered 03/16/16 07:32:28    Desc Ch 7:
First Meeting I/J No POC    Page 1 of 2

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Colleen Patricia Brannon** | Social Security number or ITIN    xxx–xx–5350 |
| | First Name    Middle Name    Last Name | EIN    __–_____ |
| Debtor 2 (Spouse, if filing) | _____ First Name    Middle Name    Last Name | Social Security number or ITIN    ____ EIN    __–_____ |
| United States Bankruptcy Court    Northern District of Georgia Court website: www.ganb.uscourts.gov | | Date case filed for chapter  7   3/15/16 |
| Case number:   16–54770–wlh | | |

Official Form 309A (For Individuals or Joint Debtors)
## Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline          12/15

For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at   www.pacer.gov).  Copy fees or access charges may apply. A free automated response system is available at 866–222–8029 (Georgia Northern). You must have case number, debtor name, or SSN when calling.

The staff of the bankruptcy clerk's office cannot give legal advice.

To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.

Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.

| | About Debtor 1: | About Debtor 2: |
|---|---|---|
| 1. Debtor's full name | Colleen Patricia Brannon | |
| 2. All other names used in the last 8 years | fka Colleen Polk | |
| 3. Address | 205 Gum Creek Circle Oxford, GA 30054 | |
| 4. Debtor's attorney Name and address | Cindy S. Stacey Cindy S. Stacey Suite B 942 Green Street Conyers, GA 30012 Contact phone (770) 922–0081 Email:  cindystacey2@gmail.com | |
| 5. Bankruptcy trustee Name and address | Jason L. Pettie Suite 150 – One Decatur Town Center 150 E. Ponce de Leon Avenue Decatur, GA 30030 | Contact phone (404) 638–5984 |

For more information, see page 2 >



Case 16-54770-wlh    Doc 6    Filed 03/16/16    Entered 03/16/16 07:32:28    Desc Ch 7
First Meeting I/J No POC    Page 2 of 2

Debtor  Colleen Patricia Brannon                                    Case number 16-54770-wlh

| 6. | Bankruptcy clerk's office | M. Regina Thomas | Office Hours: 8:00 a.m. – 4:00 p.m. |
| | | Clerk of Court | |
| | Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 1340 Russell Federal Building 75 Ted Turner Drive SW Atlanta, GA 30303 | Court website: www.ganb.uscourts.gov  Contact phone 404-215-1000 |

| 7. | Meeting of creditors | April 20, 2016 at 09:30 AM | Location: |
| | Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Bring a copy of this notice with you. Creditors may attend, but are not required to do so. Cellular phones and other devices with cameras are not allowed in the building. | The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.  TO THE DEBTOR: Bring an original government issued photo ID and confirmation of social security number. Provide the Trustee a copy of your most recently filed tax return seven days prior to the meeting, but DO NOT FILE WITH THE COURT. | Third Floor – Room 365, Russell Federal Building, 75 Ted Turner Drive SW, Atlanta, GA 30303 |

| 8. | Presumption of abuse | The presumption of abuse does not arise. | |
| | If the presumption of abuse arises, you may have the right to file a motion to dismiss the case under 11 U.S.C. § 707(b). Debtors may rebut the presumption by showing special circumstances. | | |

| 9. | Deadlines | File by the deadline to object to discharge or to challenge whether certain debts are dischargeable: | Filing deadline: 6/20/16 |
| | The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | You must file a complaint:  • if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or  • if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6).  You must file a motion:  • if you assert that the discharge should be denied under § 727(a)(8) or (9) | |
| | | Deadline to object to exemptions: The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | Filing deadline: 30 days after the conclusion of the meeting of creditors |

| 10. | Proof of claim | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| | Please do not file a proof of claim unless you receive a notice to do so. | | |

| 11. | Creditors with a foreign address | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

| 12. | Exempt property | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 9. | |

Official Form 309A (For Individuals or Joint Debtors) Notice of Chapter 7 Bankruptcy Case -- No Proof of Claim Deadline                        page 2

**EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE**

**Order and Judgment**

JP

MC

Case 16-05212-wlh    Doc 37    Filed 04/06/18    Entered 04/06/18 09:27:29    Desc Main
Document    Page 1 of 14

**IT IS ORDERED as set forth below:**

Date: April 5, 2018

_Wendy L. Hagenau_

Wendy L. Hagenau
U.S. Bankruptcy Court Judge

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-54770-WLH |
| COLLEEN PATRICIA BRANNON, | CHAPTER 7 |
| Debtor. | |
| JASON L. PETTIE,<br>CHAPTER 7 TRUSTEE FOR THE ESTATE<br>OF COLLEEN PATRICIA BRANNON, | ADVERSARY PROCEEDING<br>NO. 16-5212-WLH |
| Plaintiff, | |
| v. | |
| COLLEEN PATRICIA BRANNON,<br>BENJAMIN T. POLK, AND<br>REGIONS BANK, | |
| Defendants. | |

1

## ORDER GRANTING SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (the "Motion"). Plaintiff seeks to avoid and recover a transfer of property set out in a divorce decree. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

I.    FACTS

Plaintiff filed the Motion on February 9, 2018 and included a Statement of Undisputed Facts. Defendant Benjamin T. Polk ("Polk") did not respond to the Motion and did not dispute the Statement of Undisputed Facts and has therefore admitted the facts identified therein. BLR 7056-1(a)(2).

Debtor and Polk purchased real property at 3291 Zingara Road NE, Conyers, Rockdale County, Georgia 30094 (the "Property"). The property was titled in both their names, and the warranty deed was recorded on the real property records with the Superior Court of Rockdale County on October 23, 2002. The Property was encumbered by two security deeds, the first of which has been declared unenforceable and not a valid lien on the Property and any sales proceeds. (Doc. No. 17.) The second lien represents a revolving line of credit and has a loan payoff of approximately $34,760. The Debtor valued the Property at $108,000 in her bankruptcy schedules. Plaintiff alleges the Property has been valued between $121,785 and $146,040.

The parties divorced and the Superior Court of Rockdale County entered an Amended and Final Judgment and Decree on June 12, 2015 (the "Divorce Decree"). The Divorce Decree provides: "The marital home located at 3291 Zingara Road, Conyers, Rockdale County, Georgia 30012, which is titled solely in the Husband's name, is hereby awarded to the Husband . . . free and clear of any clam by the Wife." While the Divorce Decree contemplates a conveyance of

2

Debtor's one-half interest to Polk (the "Transfer"), Debtor did not execute and did not record a quit claim deed to Polk conveying her one-half interest in the Property. Neither the Divorce Decree nor a notice of *lis pendens* was recorded in the real estate records.

Debtor filed a Chapter 7 bankruptcy petition on March 15, 2016. Plaintiff filed the Complaint on September 7, 2016 and an Amended Complaint on June 29, 2017. Plaintiff alleges any interest Polk acquired in the Property under the Divorce Decree is subject to avoidance. Plaintiff seeks to avoid the Transfer pursuant to sections 544(a)(3) and 548(a)(1)(B) of the Bankruptcy Code; to find Polk liable for the Transfer pursuant to section 550 of the Bankruptcy Code; to preserve the Transfer for the benefit of the estate pursuant to 11 U.S.C. § 551; authorization to sell the Property pursuant to 11 U.S.C. § 363(h); and an order directing Polk to turn over the Property to Plaintiff. Polk answered the Complaint and the Amended Complaint asserting he is the sole owner of the Property pursuant to the Divorce Decree and Plaintiff has no interest in the Property.

Although the Motion is deemed unopposed pursuant to Local Rule 7007-1(c), the Court must determine the propriety of granting the motion. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Having read and considered the Motion, the Court finds partial summary judgment is appropriate.

II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material."

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts to demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

III.    APPLICABLE LAW

a. Count II: Avoidance of Transfer Pursuant to 11 U.S.C. § 544(a)(3)

Plaintiff alleges the Transfer is avoidable pursuant to section 544(a)(3) of the Bankruptcy Code.[1]

Section 544(a) of the Bankruptcy Code allows a trustee to avoid any transfer of property of the debtor that is voidable by a hypothetical creditor that extends credit to the debtor as of the petition date and obtains either a judicial lien or an execution against the debtor. The section provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

---

[1] Plaintiff also seeks, in the alternative, to avoid the Transfer under section 548 of the Bankruptcy Code. Because the Court finds there is no genuine issue of material fact the Transfer is avoidable pursuant to section 544(a)(3) of the Bankruptcy Code, the Court declines to consider Count III.

4

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfers to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). The trustee need not identify a specific creditor with a cause of action in order to recover under section 544(a).

Since Plaintiff holds the rights of a bona fide purchaser as of the Petition Date, the Court must determine the rights of a bona fide purchaser under Georgia law. Georgia law provides, "A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed." O.C.G.A. § 44–2–1. Further, "every unrecorded voluntary deed or conveyance of land made by any person shall be void as against subsequent bona fide purchasers for value without notice of such voluntary deed or conveyance." O.C.GA. § 44–2–3.

Under Georgia law, "a bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice." Montgomery v. Barrow, 692 S.E.2d 351, 352 (Ga. 2010) (citing Farris v. Nationsbanc Mtg. Corp., 493 S.E.2d 143, 145 (Ga. 1997)). As to notice, "any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed. And a younger deed, taken with such notice, acquires no preference by being recorded in due time." Id. (citing Price v. Watts, 158 S.E.2d 406, 407 (Ga. 1967)). Further, "notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." R.W. Holdco, Inc. v. SCI/RW Holdco, Inc., 551 S.E.2d 825, 827 (Ga. App. 2001) (citing O.C.G.A. § 23–1–17). Georgia courts have explained, "[O]ne claiming title to lands is chargeable with notice of every matter which appears in his deed, and of

5

any matters which appear on the face of any deed, decree or other instrument forming an essential link in the chain of instruments through which he deraigns title, and of whatever matters he would have learned by any inquiry which the recitals of those instruments made it his duty to pursue." Henson v. Bridges, 126 S.E.2d 226, 228 (Ga. 1962); *see also* Virginia Highland Civic Assoc., Inc. v. Paces Props., Inc., 550 S.E.2d 128 (Ga. App. 2001) (agreement not recorded within the property's chain of title does not provide inquiry notice to bona fide purchaser). A *lis pendens* was not filed in this case, however.

Georgia law provides transfers of real estate must be recorded. O.C.G.A. § 44–2–3. The recording statute covers conveyances made by judgments of divorce. Therefore, a divorce decree must be registered to be effective as a conveyance of real property against creditors and bona fide purchasers of the property. While an unrecorded conveyance is generally not effective, the filing of a *lis pendens* may serve to protect the vested interest in marital property acquired by a spouse in a divorce from avoidance because, under Georgia law, a valid notice of *lis pendens* can provide constructive notice of a pending divorce action. *See* Vance v. Lomas Mortg. U.S., 426 S.E.2d 873, 875 (Ga. 1993) (holding a *lis pendens* filed pursuant to O.C.G.A. § 44-14-610 is effective as constructive notice of the action until a final judgment has been entered in the action).

Plaintiff seeks to avoid the conveyance of the Property to Polk. Polk contends he is the sole owner of the Property pursuant to the Divorce Decree and Plaintiff has no interest in the Property. The Court disagrees. As a leading treatise explains, even after a divorce court awards property to a spouse, that spouse's rights may be preempted by a trustee in bankruptcy. 1-7 Collier Family Law and the Bankruptcy Code P 7.06 (2017).

Other courts considering similar facts have concluded a trustee's strong-arm powers under section 544(a) create an interest superior to an unrecorded, pre-petition divorce decree that

JP

6



transfers real property between a debtor and her spouse.  For example, in Mostoller v. Kelley (In re Kelley), 304 B.R. 331 (Bankr. E.D. Tenn. 2003), the bankruptcy court found, under Tennessee law, "an unregistered decree [is] not the equivalent of a registered deed, and [is] therefore ineffectual as against creditors." Id. at 336-37.  The court explained, to be effective as a conveyance of real property against creditors and bona fide purchasers of the property, a divorce decree must be registered. Id. at 337. The court found the rights of the Chapter 7 trustee defeated the rights of the holder of an unrecorded divorce decree as to the real property in question and, accordingly, the debtor's bankruptcy estate possessed an undivided one-half interest in the real property.

The bankruptcy court in In re Golemo, 494 B.R. 588 (Bankr. D. Mass. 2013), looked to Massachusetts law and reached the same conclusion: the trustee could avoid a transfer in an unrecorded divorce decree. The parties entered a divorce decree ordering the debtor to transfer all of his interest in real estate to his spouse. Neither the debtor nor his ex-wife recorded the decree with the registry of deeds, and the Chapter 7 trustee sought to avoid and recover the transfer described in a divorce decree.  The court found the unrecorded divorce decree was effective in dissolving the marriage between the debtor and his ex-wife, but it was *not* effective as a conveyance of the debtor's interests in real property to the debtor's ex-wife as against third parties without notice. Id. at 593. The court explained while a purchaser may have learned about the divorce and the debtor's ex-wife's interest in the property by examining the probate court records, records of the probate court are not the equivalent of recording documents with the registry of deeds; as such, purchasers are not obligated to examine probate court records. *See also* Phillips v. Chandler, 215 B.R. 684 (E.D. Va. 1997) (finding, under Virginia law, the defendant's failure to record a divorce decree rendered any transfer of the property void and left the debtor and the



defendant each owning an undivided one-half interest in the property until the decree was recorded); Perlow v. Perlow, 128 B.R. 412 (E.D.N.C. 1991) (looking to North Carolina law and holding a wife's unrecorded equitable interest in marital property was superseded by the trustee under section 544(a)); Lovald v. Claussen (In re Claussen), 387 B.R. 249, 256 (Bankr. D.S.D. 2007) (construing South Dakota law and finding, while it may have been enforceable between the debtor and her ex-husband, an unrecorded divorce decree was not effective against the Chapter 7 trustee in his capacity as a hypothetical judicial lienholder).

Conversely, when a deed is recorded pre-petition, courts have not permitted a Chapter 7 trustee, as a hypothetical bona fide purchaser under section 544(a)(3), to avoid a transfer of property under a pre-petition divorce decree. For example, in Roost v. Wilber (In re Parker), 241 B.R. 722 (Bankr. D. Ore. 1999), the bankruptcy court found a bona fide purchaser on the petition date would be on notice of a transfer of real property from the debtor to her ex-husband because the divorce decree awarding the real property to the debtor's spouse was recorded in the county property records pre-petition. *See also* Anderson v. Conine (In re Robertson), 203 F.3d 855 (5th Cir. 2000) (holding the trustee could not recover separate property of the debtor's former spouse, acquired through a pre-bankruptcy divorce, when the divorce judgment was recorded in the appropriate land conveyance records pre-petition and, therefore, could not be attacked by a bona fide purchaser for value).

While this Court has not considered this exact issue, the Court has found, under Georgia law, a Chapter 7 trustee's strong arm power defeats any unrecorded equitable interest in real estate the debtor's spouse had prior to divorce. *See* Anderson v. Briglevich, 147 B.R. 1015, 1021-22 (Bankr. N.D. Ga. 1992). In Anderson, at the time he filed bankruptcy, the debtor held sole title to real estate and the debtor's spouse had no recorded interest in the properties. The parties then



executed and recorded a divorce decree post-petition that awarded the debtor's ex-wife title to real property. The Court concluded, at the time of bankruptcy, debtor held sole title to the real estate at issue and any interest in specific real estate the debtor's spouse may have claimed as marital property was superseded by the Chapter 7 trustee's powers under section 544(a)(3).

In this case, the Divorce Decree was not recorded in the real property records. No *lis pendens* was filed. Polk has not identified an applicable Georgia statute to indicate the Divorce Decree created any sort of trust enforceable against a hypothetical lien holder. Accordingly, on the petition date, anyone who checked the Debtor's title in the Property would have found the Debtor holding title to the Property with Polk, and no evidence of Polk solely holding title to the Property. There was no actual and no constructive notice to Plaintiff of the Transfer to Polk. Therefore, while the Divorce Decree may be binding upon the Debtor and Polk, it had no effect on their third party creditors, including the Trustee as a hypothetical lien creditor. Accordingly, the Court finds there are no genuine issues of material fact as to Count II of the Amended Complaint. Plaintiff may avoid the Transfer pursuant to section 544(a)(3).

### b. Counts IV & V: Recovery and Preservation of the Avoided Transfer Pursuant to 11 U.S.C. §§ 550 and 551

Plaintiff seeks to recover the Transfer pursuant to section 550 and preserve the Transfer pursuant to section 551. Section 550 authorizes the trustee to recover property, for the benefit of the estate, to the extent a transfer has been avoided under section 544. Under section 551, any transfer avoided under section 544 is preserved for the benefit of the estate. Plaintiff may avoid the Transfer pursuant to section 544(a)(3). Therefore, pursuant to sections 550 and 551, Plaintiff is authorized to recover the avoided Transfer of the Property to Polk and the avoided Transfer is preserved for the benefit of the estate. Plaintiff's Motion as to Counts IV and V of the Amended Complaint is granted.

9



    **c.  Count VI: Claim for Authority to Sell the Property Free and Clear Pursuant
to 11 U.S.C. § 363(h)**

Plaintiff also seeks authority to sell real property of the bankruptcy estate free and clear of

Polk's liens, claims, and interests pursuant to section 363(h) of the Bankruptcy Code.

Section 363 provides a trustee may sell both the estate's interest in property and a co-

owner's interest if the following four conditions are met:

> (1) partition in kind of such property among the estate and such co-owners
> is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize
> significantly less for the estate than sale of such property free of the interests
> of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of
> co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution,
> for sale, of electric energy or of natural or synthetic gas for heat, light, or
> power.

11 U.S.C. §§ 363(f), (h).  Every requirement must be satisfied, and the trustee carries the burden

of proof with respect to all of the section 363(h) requirements.  Pullen v. Love (In re Pullen), Case

No. 09-61108-MGD, Adv. No. 11-05620, 2013 Bankr. LEXIS 4302, *28 (Bankr. N.D. Ga. Aug.

7, 2013).

First, partition of the Property between the estate and Polk is impracticable.  "Where

property is a single family residence, there is no practicable manner of partition other than a sale

and division of the proceeds." Pullen, 2013 Bankr. LEXIS 4302, at *31 (citations omitted); *see

also* In re Ivey, 10 B.R. 230, 232 (Bankr. N.D. Ga. 1981) (finding the first condition satisfied

where the property was a residence and the co-owners were divorced).  The Property is a single-

family home and Polk has admitted partition in kind of the Property is not practicable.  Therefore,

the Court finds Plaintiff has satisfied the first prong of section 363(h).



Second, Plaintiff must prove the sale of the estate's one-half interest in the Property would recognize significantly less value for the estate than the sale of the property free of the Polk's interest. "It is widely accepted that a sale of a single family residence subject to a co-owners one-half interest in such property 'chills any prospective purchase of the estate's one-half interest,' and the estate would realize more value from the sale of the co-owner's interest along with that of the estate." Pullen, 2013 Bankr. LEXIS 4302, at *32 (citations omitted). Plaintiff asserts the sale of the estate's one-half interest in the Property would recognize significantly less value for the estate than sale of the entire property. Because Polk's undivided one-half interest chills any prospective purchase of the estate's one-half interest, the Court finds the estate would realize more from a sale free of Polk's interest. Accordingly, the second element of section 363(h) is satisfied.

Third, Plaintiff must prove the benefit to the estate of a sale of the Property free of Polk's interest outweighs the detriment to Polk. This prong requires a balancing of the estate's benefit and the co-owner's detriment, but it does not require the estate's benefit to significantly exceed the co-owner's detriment. Pullen, 2013 Bankr. LEXIS 4302, at *33. Although the trustee bears the burden of proof on this element, his "initial burden . . . is simply to show that a sale free of the interests of the debtor's co-owners will produce a benefit to the estate" and, "[o]nce that burden is met, the defendants must come forward with evidence of detriment." Ogier v. Atwater (In re Quinones), Case No. 16-56100-LRC, Adv. No. 16-05273, 2017 Bankr. LEXIS 3230, at *9 (Bankr. N.D. Ga. Sep. 22, 2017) (citing In re Jenkins, 347 B.R. 77, 86 (Bankr. N.D. Ill. 2006)). 

In considering the detriment to a co-owner, the court must consider the economic and non-economic factors. The court must consider "not only economic hardship, but also any loss, harm, injury, or prejudice proximately following from an involuntary displacement." Pullen, 2013 Bankr. LEXIS at *33-34. The detriment to a co-owner may be significant where a sale would

11

displace the co-owner from her residence or otherwise result in serious hardship.  In re Ocean Blue

Leasehold Prop., LLC, Case No. 07-17999, Adv. No. 07-0791, 2008 Bankr. LEXIS 674 (Bankr.

S.D. Fla. Mar. 7, 2008).

Plaintiff alleges selling the Property would result in a significant benefit to the estate that

far outweighs any detriment to Polk, who would receive one-half of any net sale proceeds.  Polk

does not dispute the Property has value.  Debtor valued the Property at $108,000 at the time she

filed her bankruptcy petition, and Plaintiff alleges the Property has been valued at approximately

$121,785 – $146,040.  Plaintiff filed a report of assets and request to set claim deadline; only one

claim for $14,596.22 was filed by U.S. Bank, N.A.  A sale of the Property would allow the Trustee

to pay the claim, and Polk would also receive one-half of any net sale proceeds.  Polk has not

presented any evidence of detriment.  While he could be displaced by a sale of the Property, he

has not presented any evidence of serious hardship.

Further, Polk has a safeguard – he can purchase the estate's interest in the Property.  Section

363(i) gives a co-owner the right of first refusal to purchase the Property at the price at which the

sale is to be consummated.  11 U.S.C. § 363(i) ("Before the consummation of a sale of property to

which subsection (g) or (h) of [§ 363] applies, . . . the . . . co-owner of such property . . . may

purchase such property at the price at which such sale is to be consummated.").  This

section mitigates potential economic and emotional detriment because it provides Polk a right of

first refusal before Plaintiff can consummate a sale of the Property under section 363(h).  Where

there is equity in the property, the co-owner can also likely secure new financing.  See In re Ivey,

10 B.R. 230, 233 (Bankr. N.D. Ga. 1981).  Here, there is equity in the Property, so financing should

be available if Polk wishes to purchase the Property.

12



After considering the benefit to the estate and the detriment, both economic and non-economic, to Polk of a sale of the Property, the Court finds the benefit to the estate outweighs the detriment to Polk. Plaintiff has satisfied the third factor of section 363(h).

Fourth, Plaintiff alleges, and Polk admits, the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. The final factor of section 363(h) is therefore met.

The Trustee has met his burden and satisfied all of the requirements of section 363(h). Accordingly, the Trustee is authorized to sell both the estate's interest and Polk's interest in the Property pursuant to section 363(h), provided any contract to sell is subject to Court approval, after notice and a hearing, and all liens and ownership interests will attach to the proceeds of the sale.

### d.  Claim for Turnover Pursuant to Section 542

Finally, Plaintiff seeks an order directing turnover of the Property. Section 542(a) of the Bankruptcy Code provides, "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542. The Property is not of inconsequential value and is an asset of the estate that may be sold by Plaintiff pursuant to section 363(h). Accordingly, the Property must be turned over to Plaintiff effective upon Court approval of any sale of the Property.

### IV.    CONCLUSION

The Court finds there are no genuine issues of material fact as to Counts II, IV, V, VI, and VII of the Amended Complaint. Accordingly,



13

**IT IS ORDERED** the Motion is **GRANTED**. Judgment in favor of Plaintiff will be entered by separate order.

The Clerk's Office is directed to serve a copy of this order on Plaintiff, Plaintiff's counsel, Debtor, Debtor's counsel, Defendant Polk, and the United States Trustee.

### END OF DOCUMENT

**IT IS ORDERED as set forth below:**

**Date: April 5, 2018**

_Wendy L. Hagenau_

Wendy L. Hagenau
U.S. Bankruptcy Court Judge

---

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-54770-WLH |
| COLLEEN PATRICIA BRANNON, | CHAPTER 7 |
| Debtor. | |
| JASON L. PETTIE, CHAPTER 7 TRUSTEE FOR THE ESTATE OF COLLEEN PATRICIA BRANNON, | ADVERSARY PROCEEDING NO. 16-5212-WLH |
| Plaintiff, | |
| v. | |
| COLLEEN PATRICIA BRANNON, BENJAMIN T. POLK, AND REGIONS BANK, | |
| Defendants. | |

1

## JUDGMENT

Pursuant to the Court's order entered contemporaneously, **JUDGMENT IS ENTERED** in favor of Plaintiff on Counts II, IV, V, VI, and VII of the Amended Complaint.

**END OF DOCUMENT**

2

EXHIBIT "C" of TRUSTEE'S DEED OF REAL ESTATE

Sale Order

12915475v1

# EXHIBIT "B"

## Seller's Affidavit

JP

M

12915475v1

STATE OF GEORGIA
COUNTY OF FULTON

### <u>SELLER'S AFFIDAVIT</u>

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **Colleen Patricia Brannon**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 16-54770-WLH**, subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **<u>Exhibit "A"</u>** attached hereto and incorporated herein by reference (the "Property");

That Seller has never seen the Property and makes no warranties or representations in regard thereto. Seller has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **<u>Exhibit "B"</u>** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That, to the best of the knowledge of Seller, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That Seller is making this affidavit with the knowledge that it will be relied upon by **MARITZA CASTRO** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
this 18th day of January, 2019.

_____
Notary Public
My Commission expires: _____

[NOTARY SEAL]

_____ [SEAL]
**JASON L. PETTIE**, as and only as Trustee in Bankruptcy of the Estate of **Colleen Patricia Brannon** pursuant to Bankruptcy Court Order and Order and Judgment Authorizing the Sale of the Property

12915475v1

<u>**SELLER'S AFFIDAVIT**</u>

**Index to Exhibits**

Exhibit "A"   -   Legal Description of the Property

Exhibit "B"   -   Permitted Exceptions

JP

MC

12915475v1

## EXHIBIT "A"

### Legal Description of the Property

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 333 OF THE 16TH DISTRICT, ROCKDALE COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE POINT OF INTERSECTION OF THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL (80' R/W) AND THE CENTERLINE OF ZINGARA ROAD; THENCE 418.9 FEET SOUTHEASTERLY ALONG THE SOUTHERLY NGHT OF WAY OF HIGHTOWER TRAIL TO AN IRON PIN FOUND (5/8" REBAR); THENCE SOUTH 27 DEGREES 56 MINUTES WEST A DISTANCE OF 400.00 FEET TO AN IRON PIN SET (1/2" REBAR) AND THE TRUE POINT OF BEGINNING. THENCE SOUTH 65 DEGREES 15 MINUTES EAST A DISTANCE OF 26.23 FEET TO AN IRON PIN FOUND (1/2" REBAR); THENCE SOUTH 72 DEGREES 15 MINUTES EAST A DISTANCE OF 289.86 FEET TO AN IRON PIN FOUND (1/2" PIPE); THENCE SOUTH 27 DEGREES 44 MINUTES WEST A DISTANCE OF 649.00 FEET TO AN IRON PIN FOUND (1/2" PIPE); THENCE NORTH 63 DEGREES 19 MINUTES WEST A DISTANCE OF 3 13.83 FEET TO AND IRON PIN FOUND (1/2" PIPE); THENCE NORTH 27 DEGREES 56 MINUTES EAST A DISTANCE OF 603.15 FEET TO AN IRON PIN SET (1/2" REBAR) AND THE TRUE POINT OF BEGINNING.

SAID TRACT OR PARCEL OF LAND BEING 4.48 ACRES OF LAND WITH IMPROVEMENTS AS SHOWN ON A SURVEY FOR BENJAMIN T. POLK BY J. M. MASSEY & COMPANY (JOHN M. MASSEY, JR. GEORGIA REGISTERED LAND SURVEYOR NO. 2490) DATED OCTOBER 1, 2002.

ITEM TWO — (ACCESS EASEMENT):

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 333 OF THE 16TH DISTRICT, ROCKDALE COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS;

BEGINNING AT THE POINT OF INTERSECTION OF THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL (80' R/W) AND THE CENTERLINE OF ZINGARA ROAD; THENCE 418.9 FEET SOUTHEASTERLY ALONG THE SOUTHERLY RIGHT OF WAY OF HIGHTOWER TRAIL TO AN IRON PIN FOUND (5/8" REBAR); THENCE SOUTH 27 DEGREES 56 MINUTES WEST A DISTANCE OF 1003.15 FEET TO AN IRON PIN FOUND (1/2" PIPE) AND THE TRUE POINT OF BEGINNING. THENCE SOUTH 63 DEGREES 19 MINUTES EAST A DISTANCE OF 20.00 FEET TO A POINT; THENCE SOUTH 26 DEGREES 41 MINUTES WEST A DISTANCE OF 20.00 FEET TO A POINT; THENCE NORTH 63 DEGREES 19 MINUTES WEST A DISTANCE OF 173.70 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY OF ZINGARA ROAD; THENCE NORTH 14 DEGREES 33 MINUTES EAST ALONG THE EASTERLY RIGHT OF WAY OF ZINGARA ROAD A DISTANCE OF 20.46 FEET TO A POINT; THENCE SOUTH 63 DEGREES 19 MINUTES EAST A DISTANCE OF 158.00 FEET TO AN IRON PIN FOUND (1/2" PIPE) AND THE TRUE POINT OF BEGINNING.

SAID TRACT OR PARCEL OF LAND BEING A 20-FOOT WIDE ACCESS EASEMENT CONTAINING 0.08 ACRE OF LAND AS SHOWN ON A SURVEY FOR BENJAMIN T. POLK BY J. M. MASSEY & COMPANY (JOHN M. MASSEY, JR. GEORGIA

12915475v1

REGISTERED LAND SURVEYOR NO. 2490) DATED OCTOBER 1, 2002, ATTACHED
HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

SAID PROPERTY KNOWN GENERALLY AS 3291 ZINGARA ROAD, NE, CONYERS,
ROCKDALE COUNTY, GEORGIA 30094.  PARCEL ID: 12736682

12915475v1

## EXHIBIT "B"

### Permitted Exceptions

1. *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2019.

2. All other matters disclosed by the public records.

3. Zoning ordinances affecting the property.

JP

MC

12915475v1

## EXHIBIT "C"

### Special Stipulations

1.  Purchaser understands the Property is being sold "as is, where is" and waives the right to request repairs.

2.  Purchaser understands there is no disclosure statement included as part of this Agreement.

3.  Purchaser shall have the right and responsibility to procure a survey of the Property.

4.  Purchaser has tendered the earnest money to Southside Realtors in the amount of TWO THOUSAND SIX HUNDRED AND NO/100 DOLLARS ($2,600.00).

4.  This Agreement is subject to no contingencies.  All contingencies have been met.

5.  Seller will pay up to THREE THOUSAND NINE HUNDRED AND NO/100 DOLLARS ($3,900.00) in Purchaser's closing costs.

6.  Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or before January 18, 2019, or within ten (10) days following the Bankruptcy Court approval.



12915475v1



## CERTIFICATE SERVICE

This is to certify that I, Neil C. Gordon, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for Authority to (I) Sell Real Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (II) Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail to the following persons at the addresses stated:

*First Class Mail:*

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Jason L. Pettie
Chapter 7 Trustee
P.O. Box 17936
Atlanta, GA 30312

Rockdale County Tax Commissioner
969 Pine Street
P.O. Box 1497
Conyers, GA 30012

Benjamin T. Polk
3291 Zingara Road, NE
Conyers, GA 30094

Cindy S. Stacey
Cindy S. Stacey, P.C.
P. O. Box 1810
Conyers, GA 30012

Colleen Patricia Brannon
2851 Broughton Road
Newborn, GA 30056

Michael Campbell
ATTENTION: Denise Hammock
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, Georgia 30342

*Certified and first class mail:*

Grayson Hall, CEO
Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

This 6th day of December, 2018.

/s/ Neil C. Gordon
Neil C. Gordon
Georgia Bar No. 302387

12920120v1